SEEKONK LACE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29296. Filed June 29, 1955.

Walter F. Gibbons, Esq., for the petitioner.
George J. LeBlanc, Esq., for the respondent.

554

OPINION.

TIETJENS, *Judge:* Section 722 (a) of the Internal Revenue Code of 1939 provides relief from excess profits tax if the taxpayer establishes (a) that its tax, computed without the benefit of section 722, is excessive and discriminatory, and (b) what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period. To show that its tax is excessive and discriminatory petitioner contends that its average base period net income (1936–1939) is an inadequate standard of normal earnings because its business was depressed in the base period due to temporary economic circumstances unusual in its business, or in the industry of which it is a member (section 722 (b) (2)). These temporary economic circumstances, according to petitioner, were (a) the trade advantage, or export bounty, accruing to the French Levers lace industry as a result of the devaluations of the franc in the base period; and (b) the reduction in duty imposed by the United States on the import of French Levers laces, which was contained in the Reciprocal Trade Agreement between the United States and France, effective June 15, 1936. According to petitioner these circumstances, separately or in conjunction, caused a heavy increase in the volume of exports of French Levers laces to the United States, which depressed the selling price of Levers laces here, and as a result its earnings in the base period were seriously depressed.

Respondent's position is (a) that petitioner's business was not temporarily depressed during the base period by reason of the increase in imports of Levers laces from France; (b) that the circumstances relied on by petitioner as the cause of its depression were not

temporary economic circumstances unusual in the case of petitioner, or petitioner's industry, within the meaning of section 722 (b) (2), but were legislative events or administrative acts pursuant to legislative or constitutional authority; and (c) that petitioner has not established what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income.

Petitioner's argument reduces to this: the two factors, i. e., the export advantage resulting from the devaluation of the French franc in the period 1936 to 1939 and the United States tariff reduction during the base period were unusual temporary economic circumstances, the concurrence of which resulted in a depression of petitioner's business or of the industry of which it was a member. As we see it, neither the devaluation nor the reduction in duty was unusual or temporary. Reference to our Findings of Fact indicates a long history of devaluations and many changes in duty. We see nothing unusual about the circumstances complained of. The historical data of record establish the contrary—that such currency fluctuations and duty changes were the normal or expected happenings in the field of international monetary and tariff policy. We find nothing in the evidence before us which would justify characterizing these events either as temporary or unusual.

Furthermore, the circumstances on which petitioner relies had no direct effect on petitioner's business. They were not like a strike or a fire or a ruinous price war. *If* petitioner's business, or the business of the American lace industry of which it was a member, was depressed during the base period years so that the resulting excess profits tax was excessive and discriminatory (a question which we find unnecessary to answer) it was the result of competition with French lace makers during a period when the French manufacturers had the competitive advantage. The evidence shows that ever since the Levers lace industry became established in the United States, its principal competition has come from French Levers laces. In fact, in order to establish the industry in this country, it was necessary to raise the import duties on Levers laces, at the same time providing for the duty-free entrance into the United States of the machinery on which Levers laces are made since none of it was manufactured in this country. The industry enjoyed high protection until 1936, the duty rising to as high as 90 per cent on all Levers laces imported into the United States between 1922 and 1936. In the latter year the rates were reduced in recognition of the need to stimulate international trade as a means of bettering economic conditions in trading nations and, particularly, to combat the world-wide depression of the early 1930's. The reduction of duties in 1936,

in our view, was attributable to a change in the trade policy of the United States from the protectionism of the 1920's to a recognition of the economic interdependence of the principal countries of the world and the need to stimulate trade between these countries. Both the devaluation of the franc and the reduction in the duty rates were the result of the interplay of world-wide economic conditions. They were governmental actions taken to implement national economic policies to ameliorate those conditions. Governmental actions, even where they have a direct impact on a taxpayer's business, are not the basis for relief under section 722. *Acme Breweries*, 14 T. C. 1034; *Packer Publishing Co.*, 17 T. C. 882, 897; *Norfolk & Chesapeake Coal Co.*, 18 T. C. 904.

As stated above, in this case the circumstances complained of had no direct impact at all on petitioner's business. The duties were not levied on petitioner's product and the franc devaluation was the action of a foreign government which only very indirectly affected petitioner. The most that can be said is that the duty change and the franc devaluation contributed to increased competition between the French and American manufacturers of Levers laces. But we have held in several cases that competition is not a temporary economic circumstance within the meaning of section 722 which would entitle taxpayers to relief under that section. *Lamar Creamery Co.*, 8 T. C. 928, 938, 939; *Harlan Bourbon & Wine Co.*, 14 T. C. 97, 104. No different result is called for here.

The action of respondent in rejecting petitioner's claims for relief is sustained.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*